# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70005

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2014

Lyle W. Cayce
Clerk

SUZANNE MARGARET BASSO,

Petitioner-Appellant,

v.

WILLIAM STEPHENS, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-213

Before DAVIS, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

Petitioner requests a certificate of appealability ("COA") to appeal the federal district court's denial of habeas corpus relief under 28 U.S.C. § 2254. Because reasonable jurists would not find the district court's rejection of Petitioner's claims under the Eighth Amendment to be debatable, we deny Petitioner's application for a COA and associated motion for stay of execution.

I.

Petitioner was convicted of capital murder in the death of Louis "Buddy"

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-70005

Musso. The facts of the offense are summarized in the opinion issued by the Texas Court of Criminal Appeals ("TCCA") on direct appeal.[1] A jury found Petitioner guilty on August 27, 1999, and the trial court imposed a sentence of death by lethal injection on September 1, 1999. On January 15, 2003, the TCCA affirmed Petitioner's conviction.[2] On October 6, 2003, the United States Supreme Court denied Petitioner's petition for writ of certiorari.[3]

On September 20, 2006, the TCCA denied Petitioner's initial post-conviction application for state habeas relief.[4] On January 26, 2009, the United States District Court for the Southern District of Texas denied Petitioner's first petition for a writ of habeas corpus under 28 U.S.C. § 2254.[5] On January 5, 2010, this court denied Petitioner's application for a certificate of appealability.[6] The United States Supreme Court denied Petitioner's subsequent petition for certiorari on October 4, 2010,[7] and denied her petition for rehearing on November 29, 2010.[8]

On July 19, 2013, the trial court entered an order scheduling Petitioner's execution for February 5, 2014. Petitioner then filed a motion through counsel challenging Petitioner's competence to be executed pursuant to Article 46.05 of the Texas Code of Criminal Procedure. Following a hearing where the trial court heard expert testimony regarding Petitioner's mental health, the trial court entered findings that Petitioner was competent to be executed.[9] The

---

[1] *Basso v. State*, No. 73672, 2003 WL 1702283 (Tex. Crim. App. Jan. 15, 2003) (en banc).

[2] *Id.*

[3] *Basso v. Texas*, 540 U.S. 864 (2003).

[4] *Ex parte Basso*, No. WR-63672-01, 2006 WL 2706771 (Tex. Crim. App. Sept. 20, 2006).

[5] *Basso v. Quarterman*, No. H-07-3047, 2009 WL 9083708 (S.D. Tex. Jan. 26, 2009).

[6] *Basso v. Thaler*, No. 09-70012, 359 F. App'x 504 (5th Cir. 2010).

[7] *Basso v. Thaler*, 131 S. Ct. 181 (2010).

[8] *Basso v. Thaler*, 131 S. Ct. 692 (2010).

[9] Tex. Ct.'s Findings of Fact (Rec. Doc. 3-3).

No. 14-70005

TCCA affirmed those findings on February 3, 2014.[10]

Petitioner then filed her second petition[11] for writ of habeas corpus under 28 U.S.C. § 2254.  Her petition raised two sets of arguments, all of which had been considered and rejected by the TCCA.  First, Petitioner argued that Article 46.05 of the Texas Code of Criminal Procedure violates the Eighth Amendment of the United States Constitution on various grounds.  Second, Petitioner argued that the Texas court's finding that she is competent to be executed was unreliable.  As explained in the district court's thorough memorandum opinion and order, the district court found no merit to these arguments.  On February 3, 2014, therefore, the district court denied habeas relief, denied a motion to stay the execution, and declined to issue a COA.  Petitioner's present appeal and application for a COA followed, accompanied by a motion for stay of execution.

II.

Petitioner must obtain a COA to appeal the district court's denial of any petition brought under 28 U.S.C. § 2254.[12]  A COA may be issued only after the petitioner "has made a substantial showing of the denial of a constitutional right."[13]  To meet this standard, Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate

---

[10] *Basso v. State*, No. 77032 (Tex. Crim. App. Feb. 3, 2014) (Rec. Doc. 5-5).

[11] Although this is Petitioner's second petition for writ of habeas corpus filed in federal court, it is not barred under the habeas statute.  As Respondent does not contest, the bar on "successive" applications does not apply to a claim of incompetence to be executed under the Eighth Amendment that is brought when the challenge is first ripe. *Panetti v. Quarterman*, 551 U.S. 930, 945-47 (2007); *see also Green v. Thaler*, 699 F.3d 404, 410 n.3 (5th Cir. 2012) ("[T]he district court was correct not to treat Green's motion as a successive filing[] but rather as a petition for a writ of habeas corpus.").

[12] 28 U.S.C. § 2253(c); *Blue v. Thaler*, 665 F.3d 647, 653 (5th Cir. 2011).

[13] 28 U.S.C. § 2253(c)(2).

to deserve encouragement to proceed further."[14]   As we have previously observed in death penalty cases, "any doubts as to whether a COA should issue must be resolved in the petitioner's favor."[15]

To understand whether reasonable jurists would debate the claim, we must consider the standard applicable to federal habeas review of state proceedings.[16]  To receive federal habeas relief on her claim, Petitioner must show that the TCCA's findings regarding Petitioner's competence to be executed were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[17]  Importantly, "[t]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."[18]

III.

On appeal, Petitioner first argues that the district court erred by addressing her arguments regarding Article 46.05 of the Texas Code of Criminal Procedure under the Due Process Clause and failing to address her constitutional challenge under the Eighth Amendment.  This is not, however, a fair reading of the district court's memorandum opinion.  The district court based its reasoning principally on the Supreme Court's decision in *Panetti v. Quarterman*, 551 U.S. 930 (2007), which interpreted and applied the Eighth Amendment.

---

[14] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted)).

[15] *Blue*, 665 F.3d at 653 (citation and internal quotation marks omitted).

[16] *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000).

[17] 28 U.S.C. § 2254(d).

[18] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

No. 14-70005

Petitioner also argues, as she did before the Texas court and the federal district court, that the Eighth Amendment imposes a "requirement of heightened reliability in death penalty cases." We agree with Petitioner that the Eighth Amendment incorporates a unique "need for reliability" during certain stages of capital trials and sentencing proceedings "once the death penalty is in play."[19] However, as Justice Powell explained in his controlling concurrence to *Ford*, this heightened reliability requirement specifically does not apply during the determination of competence to be executed:

> [T]he State has a substantial and legitimate interest in taking petitioner's life as punishment for his crime. . . . [T]he only question raised is not *whether*, but *when*, his execution may take place. This question is important, but it is not comparable to the antecedent question whether petitioner should be executed at all. It follows that this Court's decisions imposing heightened procedural requirements on capital trials and sentencing proceedings . . . do not apply in this context.[20]

We have previously acknowledged the importance of this distinction in *Caldwell v. Johnson*, 226 F.3d 367, 373 (5th Cir. 2000). No reasonable jurist would find that the district court's rejection of this argument is debatable.

Petitioner also argues that the Eighth Amendment is violated by Article 46.05 as it is written, regardless of how Article 46.05 was actually applied in Petitioner's case. In Petitioner's view, the federal district court erred by failing to address the constitutionality of Article 46.05, and instead focusing narrowly on the procedures to which Petitioner was subjected. Article 46.05(h) provides that "[a] defendant is incompetent to be executed if the defendant does not understand: (1) that he or she is to be executed and that the execution is

---

[19] *See United States v. Fields*, 483 F.3d 313, 335-36 (5th Cir. 2007).
[20] *Ford*, 477 U.S. at 425 (Powell, J., concurring in part and concurring in the judgment) (citations omitted).

5

imminent; and (2) the reason he or she is being executed." In Petitioner's view, three characteristics of this provision are contrary to the Eighth Amendment. First, the statute requires Petitioner to carry the burden of proof on both parts of the two-part test for competence established by *Ford v. Wainwright*, 477 U.S. 399 (1986). Second, the statute places the burden of proof on Petitioner to demonstrate incompetence by a preponderance of the evidence. Third, the statute fails to require adequate consideration of Petitioner's history of delusional thinking and other mental illness.

As the district court correctly observed, however, this case does not require a broad inquiry into whether the text of Article 46.05 explicitly requires Texas courts to comply with the Eighth Amendment in all cases. Each of the standards applicable under 28 U.S.C. § 2254(d) restrict a federal habeas court's analysis to a state court's "decision" in a particular prisoner's case. Accordingly, so long as the Texas court's decision regarding Petitioner's competence was not contrary to clearly established federal law, did not constitute an unreasonable application of clearly established federal law, and did not rely on an unreasonable determination of the facts, we have no basis under 28 U.S.C. § 2254(d) to engage in a more wide-ranging constitutional analysis of Article 46.05.[21] Applying the appropriate standards in the present case, the district court rejected each of Petitioner's arguments regarding the Texas court's application of Article 46.05. As explained below, no reasonable jurist could find this result debatable.

### A.

Initially, we reject Petitioner's argument regarding the relationship

---

[21] For the same reasons, the Texas court did not act unreasonably in failing to address explicitly the constitutionality of Article 46.05. As the Supreme Court has observed, "a state court need not cite or even be aware of our cases" to survive habeas review, so long as the state court's decision-making is not contrary to or an unreasonable application of clearly established federal law. *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

between the two subsections of Article 46.05(h) and the Supreme Court's two-part test for competence to be executed under the Eighth Amendment. This test is described in Justice Powell's concurring opinion in *Ford*, which the Supreme Court has subsequently recognized as the controlling opinion.[22] This test requires a determination of whether a prisoner understands both "the fact of [the] impending execution" and "the reason for it."[23] In Petitioner's case, the Texas court's findings of fact demonstrate that this two-part test was correctly applied. As the Texas court explained, Petitioner understands "that her execution is imminent and scheduled for February 5, 2014," and "that she is being executed because she killed complainant Louis 'Buddy' Musso."[24] The Texas court's inquiry under Article 46.05 was therefore faithful to the Eighth Amendment as interpreted in *Ford*. Whether Article 46.05 could potentially be applied in other proceedings so as to deviate from the requirements of *Ford* is irrelevant to Petitioner's case. Reasonable jurists could not debate that the district court was correct to reject Petitioner's first argument.

## B.

Petitioner also challenges the burden and standard of proof applied in this case under Article 46.05. But Petitioner identifies no clearly established federal law "as determined by the Supreme Court of the United States" that prevents the State of Texas from requiring Petitioner to prove by a preponderance of the evidence that she is incompetent to be executed.[25] Indeed, we have previously rejected an argument identical to Petitioner's in at

---

[22] *See Panetti*, 551 U.S. at 949 ("When there is no majority opinion, the narrower holding controls. *See Marks v. United States*, 430 U.S. 188, 193 (1977). Under this rule Justice Powell's opinion constitutes 'clearly established' law for purposes of § 2254 and sets the minimum procedures a State must provide to a prisoner raising a *Ford*-based competency claim.").

[23] *Ford*, 477 U.S. at 422 (Powell, J., concurring in part and concurring in the judgment).

[24] Tex. Ct.'s Findings of Fact ¶41 (Rec. Doc. 3-3).

[25] *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

least one unpublished case, *Lewis v. Quarterman*, 272 F. App'x 347, 352 (5th Cir. 2008). The Sixth Circuit has also considered such an argument and rejected it.[26] The Eleventh Circuit, sitting *en banc* in 2011, stated more broadly that "no United States Supreme Court decision has ever suggested, much less held, that a burden of proof standard on its own can so wholly burden *an Eighth Amendment right* as to eviscerate or deny that right."[27]

These authorities strongly support the rejection of Petitioner's argument. Additionally, Justice Powell held in his controlling concurrence in *Ford* that the Eighth Amendment requires only that a competence determination comport with "due process" and "basic fairness."[28] At trial, the Due Process Clause permits a state court to "presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence."[29] Contrary to Petitioner's arguments regarding *Panetti* and *Ford,* we have found no indication that the Supreme Court would impose any stricter requirements in an Eighth Amendment analysis during a determination of competence to be executed than during a Due Process analysis of competence to be tried. Reasonable jurists, therefore, would not debate that the Texas court's resolution of Petitioner's claims represents a reasonable application of federal law as determined by the Supreme Court.

## C.

Petitioner also argues that Article 46.05 is unconstitutional because it

---

[26] *Coe v. Bell*, 209 F.3d 815, 828 (6th Cir. 2000) (upholding "the placement of the burden of proof on Coe to prove by a preponderance of the evidence that he is incompetent to be executed").

[27] *Hill v. Humphrey*, 662 F.3d 1335, 1338 (11th Cir. 2011) (en banc).

[28] *Ford*, 477 U.S. at 426-27 (Powell, J., concurring in part and concurring in the judgment); *see also Rivera v. Quarterman*, 505 F.3d 349, 358 (5th Cir. 2007).

[29] *See Cooper v. Oklahoma*, 517 U.S. 348, 355 (1996) (citing *Medina v. California*, 505 U.S. 437, 446-49 (1992)).

does not explicitly require consideration of Petitioner's history of delusional thinking and other mental illness. Indeed, in *Panetti v. Quarterman*, 551 U.S. 930, 958 (2007), the Supreme Court held that a Texas court applying Article 46.05 had violated the Eighth Amendment by treating "a prisoner's delusional belief system as irrelevant" to the *Ford* inquiry. The Supreme Court did not suggest, however, that this constitutional violation arose out of any inherent defect in the Texas statute. Focusing instead on the Texas court's conduct of its proceedings, the Supreme Court concluded that the Texas court's "denial of certain of petitioner's motions rest[ed] on an implicit finding" that did not comport with a "reasonable application of the controlling standard in *Ford*."[30]

In our view, therefore, whether or not Article 46.05 explicitly requires Texas courts to give the proper attention to a prisoner's delusional belief system under *Panetti*, Article 46.05 clearly does not prevent Texas courts from doing so. For example, we concluded in *Green v. Thaler*, 699 F.3d 404, 418 (5th Cir. 2012), that a Texas court had "closely follow[ed] the requirements laid out in *Ford* and *Panetti* . . . [and] applied the correct standard" during a competence determination under Article 46.05. In the present case, the Texas court also extensively considered "the defendant's allegations of delusional experiences" during the evidentiary hearing.[31] The Texas court concluded, however, that Petitioner "was not experiencing delusions or hallucinations" and instead attributed Petitioner's reports of delusional experiences to her "history of malingering and engaging in attention-seeking behavior," including "falsif[ying] psychiatric and physical symptoms."[32]

In other words, the Texas court's inquiry did not end upon verifying Petitioner's awareness of the reasons for her execution. Instead, the Texas

---

[30] *Panetti*, 551 U.S. at 952-53.

[31] Tex. Ct.'s Findings of Fact ¶38 (Rec. Doc. 3-3).

[32] *Id.* ¶¶22-25.

court complied with *Panetti* by performing an additional analysis of Petitioner's rational understanding of the reasons for her execution in light of Petitioner's alleged delusions.[33]   We therefore conclude that no reasonable jurist would find that the district court's rejection of this claim is debatable.

## IV.

Petitioner also has made several arguments regarding the Texas court's factual findings, which in Petitioner's view were "incorrect and unreliable."   In particular, Petitioner argues that the deference ordinarily due to factual findings under 28 U.S.C. § 2254(e)(1) is "less appropriate when the findings are crafted by a party."   It is true that, on at least two occasions, the Supreme Court has expressly criticized "courts' verbatim adoption of findings of fact prepared by prevailing parties."[34]   Though we also found this practice to be troubling in *Green*, however, we concluded that this practice is not contrary to "clearly established Federal law" and does not reduce the deference otherwise owed to a state court's factual findings during habeas proceedings.[35]   In the present case, therefore, precedent bound the district court to decline Petitioner's request to apply a heightened standard of factual scrutiny. Moreover, the Supreme Court has observed that a state court's decision is subject to the same deferential standards under 28 U.S.C. § 2254(d) where the decision "is unaccompanied by an explanation," and all its findings and conclusions are therefore implicit.[36]   There is therefore no indication in the Supreme Court's jurisprudence that findings proposed by a litigant undermine these standards in any way.

Petitioner's brief may also be read to argue that the Texas court failed to

---

[33] *See Panetti*, 551 U.S. at 958; *Green*, 699 F.3d at 418.

[34] *Jefferson v. Upton*, 560 U.S. 284, 293-94 (2010); *Anderson v. City of Bessemer City*, 470 U.S. 564, 572 (1985).

[35] *Green*, 699 F.3d at 416.

[36] *See Harrington*, 131 S. Ct. at 784.

analyze whether Petitioner understood her own "role in the offense," particularly where the offense was carried out by more than one party. As Petitioner herself has acknowledged during these proceedings, however, this is a "novel" argument that has not been addressed by the Supreme Court.[37] We therefore cannot conclude that reasonable jurists would debate whether the state court's resolution of Petitioner's claims resulted from an unreasonable application of clearly established federal law as determined by the Supreme Court.[38]  In any event, a defendant's acknowledgment and acceptance of responsibility for her particular role in an offense are distinct from whether she understands why she is being punished.  Here, although Petitioner has continued to deny that she was primarily responsible for the victim's death, the Texas court found explicitly that Petitioner "understands . . . that she is being executed because she killed complainant Louis 'Buddy' Musso."[39]  Assuming only for the sake of argument that the Eighth Amendment actually imposes a "role in the offense" requirement, the Texas court fulfilled this purported requirement during the competence determination in this case.  Accordingly, no reasonable jurist would debate that the district court properly rejected this argument.

Finally, Petitioner argues that the Texas court's findings do not fairly characterize the totality of the psychiatric evidence presented.  We need not repeat each of the detailed factual findings of the Texas court, which were carefully reviewed by the federal district court in its memorandum opinion. After due consideration, we agree with the district court's observation that the Texas court's factual findings regarding Petitioner's competence are well

---

[37] *See* Petitioner-Appellant's Mot. for Leave to File a Second Petition at 12, *Basso v. Stephens*, 5th Cir. No. 14-20060 (Jan. 30, 2014) ("The latter is a novel issue; Scott Panetti, for example, was a sole actor.").

[38] *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13.

[39] Tex. Ct.'s Findings of Fact ¶41 (Rec. Doc. 3-3).

supported by the record. Significantly, Petitioner does not dispute that both of the testifying experts, Dr. Quijano and Dr. Moeller, concluded that Petitioner was competent to be executed.[40] Nor does Petitioner contest that Dr. Moeller testified "that [Petitioner] was not delusional or psychotic 'even at her worst.'"[41] In her petition, Petitioner emphasizes Dr. Quijano's statement that Petitioner would not necessarily remain competent if taken off her medication, but Dr. Moeller also gave testimony regarding his contrary view. As the district court concluded, because it is the province of the finder of fact "to weigh conflicting evidence and inferences, and determine the credibility of witnesses,"[42] the Texas court was well within its bounds to find Dr. Moeller's opinion on this point more persuasive than Dr. Quijano's. Because these findings satisfy the standards of *Ford* and *Panetti*, therefore, the Texas court's conclusion as to Petitioner's competence was not an unreasonable application of Supreme Court precedent.

Moreover, in the absence of clear and convincing evidence as to Petitioner's incompetence, the Texas court's factual findings are entitled to a presumption of reasonableness under 28 U.S.C. § 2254(e)(1). Accordingly, jurists of reason would not debate the district court's rejection of Petitioner's arguments regarding the reliability of the Texas court's factual findings.

---

[40] Tr. of Competence Hr'g at 181 (Rec. Doc. 5-2) (Dr. Quijano: "Right now she's not delusional. . . . The time I saw her she was not delusional."); Report of Dr. Quijano at 11 (Rec. Doc. 5-1 at 78) ("The defendant understood the reason why she was being executed. She said that her execution meant that she would die for killing Buddy. She said she will be executed because she 'hurt somebody,' he died, and she will die for it."); Report of Dr. Moeller at 7 (Rec. Doc. 5-4 at 8) ("I don't believe that she has a delusional disorder. . . . In my medical opinion, Ms. Basso understands that she is to be put to death on February 5, 2014 and what death means. Moreover, she understands why the state is imposing the penalty.").

[41] *See* Tex. Ct.'s Findings of Fact ¶22 (Rec. Doc. 3-3).

[42] *Roman v. Western Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (internal quotation marks and citation omitted).

No. 14-70005

V.

For the reasons set forth above and for the reasons set forth in the district court's memorandum opinion, none of the challenges raised by Petitioner are sufficient to merit the grant of a COA. We therefore deny Petitioner's application for a COA and associated motion for a stay of execution.

IT IS THEREFORE ORDERED that Petitioner's application for a COA is DENIED.

IT IS FURTHER ORDERED that appellant's motion for stay of execution scheduled for Wednesday, February 5, 2014 is DENIED.